IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| OMAR SANCHEZ-PONCE,<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | **MEMORANDUM DECISION<br>AND ORDER**<br><br>Case No.  2:12-cv-1070 CW<br><br>Judge Clark Waddoups |

Petitioner Omar Sanchez-Ponce moves under 28 U.S.C. § 2255 to vacate or set aside his conviction or reduce his sentence of 120 months imprisonment and 60 months supervised release for violation of 21 U.S.C. § 841(a)(1) (possession with intent to distribute 50 grams or more of methamphetamine). (Dkt. No. 1.)  He has also asked the court to appoint counsel and conduct an evidentiary hearing. (*Id.*). Mr. Sanchez-Ponce was convicted following a three-day jury trial.  He appealed his conviction to the United States Court of Appeals for the Tenth Circuit, which was affirmed on June 12, 2015.  In his § 2255 motion, Mr. Sanchez-Ponce alleges that he was denied his Sixth Amendment constitutional right to counsel because (1) counsel failed to challenge the district court's failure to rule on his Rule 29 motion, (2) counsel failed to object to a jury instruction that omitted an element of the offense, and (3) counsel conceded guilt to the jury without consent. For the reasons that follow, the court DENIES Mr. Sanchez-Ponce's habeas petition and requests to appoint counsel and conduct an evidentiary hearing.

## BACKGROUND

Mr. Sanchez-Ponce was indicted on February 24, 2010 with co-defendant Antonio Teran on a charge of possession with intent to distribute fifty grams or more of methamphetamine. On August 4, 2010, Mr. Teran pled guilty to the indictment and agreed to testify against Mr. Sanchez-Ponce at trial in connection with a cooperation agreement. On September 13, 2010, a three-day jury trial commenced as to Mr. Sanchez-Ponce.

Testimony at trial revealed that Mr. Teran and a confidential police informant arranged a deal whereby a substantial quantity of drugs would be exchanged for a large sum of money. Mr. Teran testified that he first met Mr. Sanchez-Ponce at a mall on Friday, January 15, 2010, where Mr. Sanchez-Ponce showed him samples of methamphetamine that he guaranteed to be of high quality. The two then discussed terms that Mr. Sanchez-Ponce would require for Mr. Teran to get the drugs, including how well Mr. Teran knew the buyers and what price they would be willing to pay. Mr. Teran also testified that the two exchanged phone calls throughout the day. Eventually, Mr. Teran testified, another individual who represented that he was with Mr. Sanchez-Ponce called to arrange a meeting with him and Mr. Sanchez-Ponce at a restaurant the following day. Mr. Teran testified that he met with both of these men at a restaurant on January 16, 2010, where they discussed the proposed buyers and the proposed exchange of money and drugs. Thereafter, according to Mr. Teran's testimony, he left the restaurant with Mr. Sanchez-Ponce and drove him to Midvale. Mr. Teran testified that he dropped Mr. Sanchez-Ponce off near some homes and drove around the neighborhood for a short time. Mr. Teran testified that when Mr. Sanchez-Ponce returned to the vehicle, he had a package of drugs inside his jacket that he first showed to him upon entering the vehicle, and then tossed into his lap. According to Mr.

Teran, he took the package out of his lap and returned the drugs to Mr. Sanchez-Ponce, after which Mr. Sanchez-Ponce leaned back and placed the package of drugs on the floor in the back of the car.

Mr. Teran testified that he and Mr. Sanchez-Ponce then drove to a gas station in Utah County where Mr. Teran had arranged to exchange drugs for money with the individual who, it turns out, was actually the confidential police informant. The government introduced evidence that the phone calls took place, along with evidence from the confidential informant and members of the police's surveillance team. After stopping and searching the vehicle, police found the bag of drugs and arrested both men. A police officer testified that while Mr. Sanchez-Ponce was in custody immediately after the arrest, Mr. Sanchez-Ponce stated that the car was not his and that the drugs were not under his seat. Trial Tr. at 208-256, *United States v. Sanchez-Ponce*, 2:10-cr-00138, Dkt. No. 134.

Immediately following the close of the government's case, defense counsel moved that the court dismiss the case, alleging that the prosecution had not met its burden of establishing a sufficient nexus or connection between Mr. Sanchez-Ponce and the drugs. Defense counsel declined to provide argument in support of the motion when invited by the court. The government, on the other hand, reviewed the evidence including the phone calls, the surveillance, and the testimony from Mr. Teran about Mr. Sanchez-Ponce coming back to the vehicle in Midvale with drugs. The court took the motion under submission, reserving ruling until the completion of the evidence.

Thereafter Mr. Sanchez-Ponce testified on his own behalf. Mr. Sanchez-Ponce testified that he knew nothing about the drugs. Rather, his testimony was that a friend from Las Vegas

who knew he was looking for work had put him in touch with Mr. Teran, and that Mr. Teran was driving him to Provo to fill out a job application after first stopping at a house in Midvale so that Mr. Sanchez-Ponce could pick up the keys to his brother's car.  After this testimony, the defense rested and did not renew its motion that the court dismiss the case.  Outside the jury's presence, the court and counsel discussed final jury instructions regarding presumption of innocence and burden of proof, although defense counsel did not raise the need for a more explicit instruction regarding nexus or connection to meet the requirement for constructive possession.

The court then instructed the jury. Specifically with respect to constructive possession, the court's instruction was as follows:

> Possession is called constructive when a person does not have direct physical control over something, but can knowingly control it and intends to control it. In order for an individual to possess something constructively, he must knowingly hold the power and ability to exercise dominion and control over, and in the case of the drugs at issue here, it means he must have an appreciable ability to guide the destiny of the drugs.
> More than one person can be in possession of an object if each knows of its presence and has the power to control it. A defendant has joint possession of an object when two or more persons share actual or constructive possession of it. However, merely being present with others who have possession of an object does not constitute possession.
> In the situation where an object is found in a place (such as a room or a car) occupied by more than one person, you may not infer control over the object based solely on joint occupancy. Mere control over the place in which the object is found is not sufficient to establish constructive possession.  Instead, in this situation, the government must prove some connection between the defendant and the object.
> Possession of a controlled substance cannot be found solely on the ground that the defendant was near or close to the controlled substance. Nor can it be found simply because the defendant was present at a scene where controlled substances were involved, or solely because the defendant associated with a person who does control the controlled substance or the property where they are

>   found. However, these factors may be considered by you, in
>   connection with all other evidence, in making your decision
>   whether the defendant possessed the controlled substance.

Trial Tr. at 448-450, *United States v. Sanchez-Ponce*, 2:10-cr-00138, Dkt. No. 129.

After the court instructed the jury, counsel made closing arguments.  The government's closing argument focused on all the evidence supporting the inference that Mr. Sanchez-Ponce and his Las Vegas associates were drug suppliers, including the timing and individuals involved in the phone calls setting up the drug deal.  The government drew attention to recorded phone calls between Mr. Teran and the confidential police informant where Mr. Teran stated first that he had to go get the drugs, and then, after driving Mr. Sanchez-Ponce to the home in Midvale, stating that they had the drugs and were on their way to make the exchange. The government also pointed out that the timing of a phone call from Mr. Sanchez-Ponce to Mr. Teran was inconsistent with Mr. Sanchez-Ponce's testimony that he had called Mr. Teran earlier in the day for the purpose of obtaining assistance in obtaining work or a ride to fill out a job application in Utah County.  The government also pointed out that Mr. Sanchez-Ponce's statement to police after his arrest that the drugs were not under his seat was inconsistent with someone who did not know about the presence of drugs in the vehicle because he was simply on the way to fill out a job application. In short, the government argued that Mr. Sanchez-Ponce and his Las Vegas associates were drug suppliers.

During closing testimony by the defense, Mr. Sanchez-Ponce's counsel specifically attempted to rebut the government's claim that Mr. Sanchez-Ponce was a drug supplier by placing responsibility for being both a drug supplier and a recruiter on Mr. Teran.  Defense counsel targeted Mr. Teran's testimony, the recorded phone calls with the confidential informant,

and the reports from the police surveillance team to demonstrate that Mr. Teran already had drugs in his car before picking up Mr. Sanchez-Ponce.  He pointed out the inconsistencies in Mr. Teran's four statements to the police about where the drugs came from.  He presented the jury with a theory whereby Mr. Sanchez-Ponce was the victim of a recruiting effort by Mr. Teran and the Las Vegas callers to turn him into a drug dealer by including him in this drug sale to show him how easy it was to make money.  He pointed out all of the reasons why Mr. Sanchez-Ponce was an ideal victim of this recruitment—including that Mr. Sanchez-Ponce had no idea what kind of business it was in which he was going to be offered work, and due to his immigration status would be unlikely to report them even if he declined to join. He pointed out that the government could not disprove this alternative theory to explain the evidence because the content of the calls with the Las Vegas associates was unknown. He emphasized that the surveillance officers saw nothing more in Midvale than Mr. Sanchez-Ponce getting out and then back in Mr. Teran's car because no drugs were in sight. Finally, he argued that because of all of this, none of the evidence shown by the government actually created any nexus or connection between Mr. Sanchez-Ponce and the drugs. *Id.* at pp. 459-492.

      The jury then found Mr. Sanchez-Ponce guilty.  Defense counsel immediately moved for judgment notwithstanding the verdict, which the court took under advisement pending further briefing which defense counsel was ordered to submit by September 29, 2010.

      On September 16, 2010, the day following the last day of trial and the jury's guilty verdict, Mr. Teran wrote a letter to the court recanting his trial testimony, stating that Mr. Sanchez-Ponce had nothing to do with the drugs found in his car and that he had lied. Four days later, on September 20, 2010, Mr. Teran wrote another letter to the court repudiating his

September 16, 2010 letter, stating that he had written it out of great fear that he would be harmed in prison by fellow prisoners who could find out that he had testified against a co-defendant. Mr. Teran went on to unequivocally state that his original trial testimony was true. The court ordered that an evidentiary hearing be scheduled to consider Mr. Teran's letters.

On the September 29, 2010 deadline for briefing on the Rule 29 motion, rather than submit briefing on that motion, defense counsel filed a motion for new trial on the basis of the newly discovered evidence of Mr. Teran's letters. Oral argument regarding this motion and Mr. Teran's letters was held on November 9, 2010. An evidentiary hearing with Mr. Teran present was held on November 18, 2010, with the court and counsel for both the government and the defense separately questioning Mr. Teran. At a follow-up oral argument held on December 2, 2010, defense counsel argued that the only nexus between Mr. Sanchez-Ponce and the drugs was Mr. Teran's trial testimony, and because Mr. Teran recanted his trial testimony and subsequently withdrew the recantation, Mr. Teran's credibility was so suspect that it cast reasonable doubt or suspicion on everything that was done at trial. In essence, defense counsel's argument was that Mr. Teran's credibility was so suspect that a reasonable jury could not have entered a guilty verdict against Mr. Sanchez-Ponce client on the basis of Mr. Teran's testimony.

The court denied the motion for a new trial based on the following reasoning: First, despite the self-serving testimony and lies that Mr. Teran admitted, Mr. Teran was fairly cross-examined on those issues at trial and the issue of his credibility raised sufficiently for the jury to make judgments about how to weigh Mr. Teran's testimony. Second, there was corroborating evidence for at least the most important parts of Mr. Teran's testimony regarding Mr. Sanchez-Ponch being involved with drug trafficking and being the source of the drugs, which the jury also

had a fair opportunity to evaluate. And finally, based on evaluation of Mr. Teran's testimony both at trial and at the evidentiary hearing regarding both post-trial letters, the court had satisfied itself that the material parts of Mr. Teran's testimony were true, and that the inconsistencies that did exist did not substantially change his testimony that Mr. Sanchez-Ponce was the source of the drugs. Hr'g Tr. at 10-11, *United States v. Sanchez-Ponce*, 2:10-cr-00138, Dkt. No. 136.

## DISCUSSION

28 U.S.C. § 2255 permits a prisoner in federal custody to challenge a sentence imposed in violation of the Constitution or laws of the United States. Plaintiff has alleged three counts of ineffective assistance of counsel in violation of the Sixth Amendment. Evaluation of his claim is controlled by the two-part test set forth in *Strickland v. Washington*, which requires Mr. Sanchez-Ponce to demonstrate (1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance was prejudicial to Mr. Sanchez-Ponce's defense. 466 U.S. 668, 690-692 (U.S. 1984).

Because "[t]here are countless ways to provide effective assistance in any given case," the court starts from the presumption that counsel's performance was objectively reasonable "and that [counsel's] challenged conduct might have been part of a sound trial strategy." *Strickland*, 466 U.S. at 689. "[W]here it is shown that a particular decision was, in fact, an adequately informed strategic choice, the presumption that the attorney's decision was objectively reasonable becomes 'virtually unchallengeable.'" *United States v. Smith*, 421 Fed. Appx. 889, 894 (10th Cir. 2011) (quoting *Bullock v. Carver*, 297 F.3d 1036, 1046 (10th Cir. 2002)). "The court must also look to the totality of the evidence to determine whether [counsel's] alleged shortcomings prejudiced [Mr. Sanchez-Ponce's] defense." *Smith*, 421 Fed. Appx. at 894. "The

touchstone of this inquiry is whether 'counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *Id.* (quoting *Strickland*, 466 U.S. at 686). "This court 'may address the performance and prejudice components in any order, but need not address both if [Mr. Sanchez-Ponce] fails to make a sufficient showing of one.'" *Id.* (quoting *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999)). Section 2255 requires an evidentiary hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

### A.  Rule 29 Motion

Rule 29(c) of the Federal Rules of Criminal Procedure provides that counsel for defendant may "move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." A court may reserve decision on the motion as long as it "decide[s] the motion on the basis of the evidence at the time the ruling was reserved." FED. R. CRIM. P. 29(b). The standard for granting a Rule 29 motion is whether "viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the defendant guilty of the crime beyond a reasonable doubt." *United States v. Vallo*, 238 F.3d 1242, 1247 (10th Cir. 2001). In doing so, the court may not weigh "conflicting evidence or consider the credibility of the witnesses," but simply determines "whether the evidence, if believed, would establish each element of the crime." *Id.*

Here, defendant's counsel moved for acquittal at the close of the government's case and again before the case was submitted to the jury. Following the guilty jury verdict, the court ordered supplemental briefing on defendant's Rule 29 motion. While this briefing was pending, Mr. Sanchez-Ponce's co-defendant recanted his trial testimony and then withdrew his

recantation. Defense counsel filed a motion for a new trial based on this newly discovered evidence rather than file supplemental briefing on the Rule 29 motion. By contrast to the standard for granting a Rule 29 motion, the standard for granting a Rule 33 motion on the basis of newly discovered evidence is whether it is "required in the interests of justice." *United States v. Quintanilla*, 193 F.3d 1139, 1146 (10th Cir. 1999). When ruling on a Rule 33 motion, the "trial court is afforded discretion . . . and is free to weigh the evidence and assess witness credibility." *Id.* (internal citations omitted). This standard is more favorable to a defendant.

Mr. Sanchez-Ponce argues that had his counsel renewed his Rule 29 motion, the court would have determined that the government had insufficient evidence to convict him because there were only "two pieces of circumstantial evidence" that established a nexus between Mr. Sanchez-Ponce and a knowledge of and access to the drugs (telephone calls made to Mr. Teran around the same time he had set up a deal to provide drugs to a confidential informant, and surveillance of Mr. Sanchez-Ponce at the time of his arrest). (Dkt. No. 2, p. 13.) He goes on to admit, however, that the government also relied on the direct testimonial evidence of Mr. Teran, which he characterizes as "uncorroborated[,] . . . insufficient to sustain a conviction [and] unbelievable." (*Id.*)

Had defendant's counsel renewed his Rule 29 motion, the court must necessarily have considered Mr. Teran's testimony by Rule 29's standard in the light most favorable to the government, i.e. as believable. Taking Mr. Teran's trial testimony as true provides the required nexus between Mr. Sanchez-Ponce and knowledge of and access to the drugs; thus Mr. Sanchez-Ponce's argument is unavailing. Furthermore, even if the court had granted the Rule 29 motion; it could have been reversed on appeal on the basis of a de novo review. *United States v.*

*Dewberry*, 790 F.3d 1022, 1028 (10th Cir. 2015).  Because defendant's counsel filed a Rule 33 motion instead, under the Rule 33 standard the court was allowed to weigh all the evidence and specifically assess Mr. Teran's credibility, which is at the heart of Mr. Sanchez-Ponce's complaint. Had Mr. Sanchez-Ponce prevailed in his Rule 33 motion, it could only have been reversed if an appellate court determined that the district court had abused its discretion, which would have been a more favorable appellate standard of review for defendant.  *Id.*  Rather than being ineffective assistance, the decision of defendant's counsel to forego his Rule 29 motion in favor of a Rule 33 motion gave defendant the opportunity for his case to be evaluated under the broadest and most favorable standard of review available to him, particularly in light of Mr. Teran's two post-trial letters.  Not only did his performance not prejudice defendant, defense counsel's strategic decision provided Mr. Sanchez-Ponce with an advantage. Therefore, defense counsel's performance was objectively reasonable.

### B. Jury Instruction

Failure to object to a jury instruction that omits an element of the offense is analyzed based on whether the error was harmless or seriously affected "the fairness, integrity or public reputation of judicial proceedings." *Neder v. United States*, 527 U.S. 1, 9 (U.S. 1999).  Before this analysis is undertaken, however, the court must first evaluate whether the jury instruction for constructive possession actually omitted specific instructions regarding the nexus between Mr. Sanchez-Ponce and his knowledge of and access to the drugs.

Mr. Sanchez-Ponce argues that the instruction given "might have impermissibly used petitioner's proximity to the drugs, and nothing more, to establish knowledge and access." (Dkt. No. 2, p. 14.)  He further goes on to state, without further analysis, that "[a] proper instruction on

constructive possession would have eliminated that possibility, by instructing on the nexus requirement." (*Id.*) The jury instruction, however, specifically stated that mere proximity to other persons who have possession of the drugs is not enough to establish constructive possession: "However, merely being present with others who have possession of an object does not constitute possession." Jury Instruction No. 21, *United States v. Sanchez-Ponce*, 2:10-cr-00138, Dkt. No. 63. It also specifically stated that "In the situation where an object is found in a place (such as a room or a car) occupied by more than one person, you may not infer control over the object based solely on joint occupancy. Mere control over the place in which the object is found is not sufficient to establish constructive possession. Instead, in this situation, the government must prove some connection between the defendant and the object." *Id.*

Finally, it stated that "[p]ossession of a controlled substance cannot be found solely on the ground that the defendant was near or close to the controlled substance. Nor can it be found simply because the defendant was present at a scene where controlled substances were involved, or solely because the defendant associated with a person who does control the controlled substance or the property where they are found." *Id.* These statements accurately and repeatedly instruct the jury that petitioner's proximity to the drugs is not enough to establish knowledge and access to them, which is what Mr. Sanchez-Ponce alleges is required. Mr. Sanchez-Ponce goes on to cite to language in *United States v. Ledford*, 443 F.3d 702, 717 (10th Cir. 2005), stating that some cases "require a harder look at the nexus requirement," but fails to argue any reason why his case is one of those cases, or what kind of instruction would have been adequate given the facts of his case. In *Ledford*, the defendant objected to a constructive possession jury instruction that failed to instruct on a requirement that defendant have intent to exercise control over the

object. The appellate court determined that intention language was not required to establish the required nexus in joint occupancy cases of constructive possession because "knowledge and access together are sufficient to show nexus." *Id*. In Mr. Sanchez-Ponce's case, however, even the *Ledford* defendant's argument fails, because the jury instruction in his case also included intention language: "Possession is called constructive when a person does not have direct physical control over something, but can knowingly control it and intends to control it." Jury Instruction No. 21, *United States v. Sanchez-Ponce*, 2:10-cr-00138, Dkt. No. 63.

Because Mr. Sanchez-Ponce has failed to demonstrate that there was anything missing from the constructive possession jury instruction regarding the nexus requirement to which his counsel could possibly have objected, the court need not evaluate whether its omission was harmless error.

### C. Closing Argument

It is "presumptively (though not still definitively)" prejudicial for counsel to confess "a client's guilt before the jury." *United States v. Gonzalez*, 238 Fed. Appx. 350, 354 (10th Cir. 2007). "To determine whether such a prejudicial admission actually occurred, the focus [is] on the factual question whether, in light of the entire record, the attorney remained a legal advocate of the defendant who acted with undivided allegiance and faithful, devoted service to the defendant." *Id.* at n. 3 (internal citations omitted). A "complete concession of guilt is a serious strategic decision that must only be made after consulting with the client and after receiving the client's consent or acquiescence." *Lott v. Trammell*, 705 F.3d 1167, 1186 (10th Cir. 2013).

Upon evaluation of defense counsel's closing argument in full and in context of the trial, it is clear that guilt was not conceded at all—in fact, counsel's closing argument supported Mr. Sanchez-Ponce's "true theory of defense—actual innocence." (Dkt. No. 2, p. 16.)  Specifically, Mr. Sanchez-Ponce's counsel specifically attempted to rebut the government's claim that Mr. Sanchez-Ponce was a drug supplier by placing responsibility for being both a drug supplier and a recruiter on Mr. Teran.  By targeting Mr. Teran's testimony, the recorded phone calls with the confidential informant, and the reports from the police surveillance team, he argued that Mr. Teran already had drugs in his car before picking up Mr. Sanchez-Ponce.  He pointed out the inconsistencies in Mr. Teran's four statements to the police about where the drugs came from.

He presented the jury with a theory whereby Mr. Sanchez-Ponce was the innocent victim of a recruiting effort by Mr. Teran and the Las Vegas callers to turn an honest job-seeker into a drug dealer by including him in this drug sale to show him how easy it was to make money.  He pointed out all of the reasons why Mr. Sanchez-Ponce was an ideal victim of this recruitment—including that Mr. Sanchez-Ponce had no idea what kind of business it was in which he was going to be offered work, and due to his immigration status would be unlikely to report them even if he declined to join. He pointed out that the government could not disprove this alternative theory to explain the evidence because the content of the calls with the Las Vegas associates was unknown. He emphasized that the surveillance officers saw nothing more in Midvale than Mr. Sanchez-Ponce getting out and then back into Mr. Teran's car because no drugs were in sight.  Finally, he argued that because of all of this, none of the evidence shown by the government actually created any nexus or connection between Mr. Sanchez-Ponce and the drugs. Trial Tr. at 473-486, *United States v. Sanchez-Ponce*, 2:10-cr-00138, Dkt. No. 129.

In context, then, not only do the sections defendant quotes from counsel's closing argument fail to constitute an admission of guilt, they fairly seek to rebut both the evidence and the government's closing argument that Mr. Sanchez-Ponce was a drug supplier. Defense counsel's closing argument was entirely consistent with Mr. Sanchez-Ponce's testimony and his theory of actual innocence. In so arguing, defense counsel remained Mr. Sanchez-Ponce's unequivocal and devoted ally.

## **CONCLUSION**

For the foregoing reasons, the court DENIES Mr. Sanchez-Ponce's habeas petition (Dkt. No. 1) and requests to appoint counsel and conduct an evidentiary hearing. When a district court issues a final order in a proceeding under § 2255, the court must address whether a certificate of appealability should be issued. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Mr. Sanchez-Ponce has failed to make a substantial showing that he was denied a constitutional right. Accordingly, the court denies a certificate of appealability.

SO ORDERED this 4th day of February, 2016.

BY THE COURT:

_____
Clark Waddoups
United States District Court Judge